PSL REALTY COMPANY *et al.*, Plaintiffs-Appellees, *v.* GRANITE INVESTMENT COMPANY *et al.*, Defendants.—(GRANITE INVESTMENT COMPANY *et al.*, Defendants-Appellants.)

Fifth District   No. 77-125

Opinion filed September 13, 1979.—Supplemental opinion filed October 2, 1979.

Rex Carr, of Cohn, Carr, Korein, Kunin & Brennan, of East St. Louis, for appellants.

James H. Bandy, of Listeman, Bandy & Hamilton, of Belleville, and William G. Guerri, W. Stanley Walch, and Robert W. Brownlee, all of Thompson and Mitchell, of St. Louis, Missouri, for appellees.

Robert W. Patterson and Robert J. Bobb, both of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for appellee Illini Federal Savings and Loan Association.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

We consider this case on appeal a second time. On the first appeal (42 Ill. App. 3d 697, 356 N.E.2d 605) we dissolved a preliminary injunction and a receivership for the reason that the plaintiffs in their complaint had sought only ancillary and temporary relief; no attempt was made to obtain relief on the merits of any claimed cause of action. We remanded the cause for a hearing to determine the proper expenses of the receivership and, after appropriate pleadings on the matter, for a determination of the plaintiffs' entitlement to be paid accrued, unpaid installments upon the contracts for deed which gave rise to this lawsuit.

This second appeal considers the propriety of the action of the trial court in striking certain petitions filed by the defendants and the final order of April 29, 1977, discharging the receiver and denying other petitions filed by defendants.

Since our disposition of the first appeal was upon procedural grounds the facts attending this case were rather sparsely stated. For disposition of this appeal a more complete statement of a complicated factual situation must be furnished.

Prior to August 1, 1970, the defendant James Green, in conjunction with others, developed and constructed several apartment complexes in Madison, Clinton, St. Clair and Sangamon Counties, Illinois. To obtain

funds for the projects first lien mortgages were executed in favor of Piasa Savings and Loan Association (Piasa). Financial difficulties were encountered in the completion and operation of the units and restructuring of the debt and provision of additional construction funds became necessary. To accomplish this the parties entered into a lengthy and detailed agreement, termed the base agreement, on August 1, 1970. Under its terms title to the units was conveyed to a newly formed corporation named PSL Realty Co., wholly owned by Piasa Savings and Loan Association, and PSL Realty Co. (PSL) then entered into contracts for deed to the same properties with Granite Investment Company (Granite), a limited partnership of which James Green (Green) was the principal, to reconvey when the provided payments were made and conditions fulfilled. Piasa Savings and Loan Association continued to hold the first lien mortgages as mortgagee.

By the terms of the base agreement all rental proceeds of the units were to be delivered to PSL by Granite, 20% of which were to be used for expenses of operating the properties, such as utilities, taxes, repairs, etc., and 80% of which were to be applied to debt service on the mortgages. Financial matters apparently did not go well for either party. Assertedly Piasa was so adversely affected by the situation that in order to protect its depositors it was merged with the Illini Savings and Loan Association (Illini) and ceased to exist as a separate operating entity. The merger was procured by the Federal Savings and Loan Insurance Corporation (FSLIC) to prevent losses to Piasa's depositors and avoid insurance payments to cover those losses. As part of the merger Illini became the owner of the mortgages, 48 in number, upon the apartment units and a residence of James Green. They also became the sole owner of PSL Realty Co. which, under the base agreement, was holder of legal title to the units, subject to the contracts for deed with Granite, and entitled to the gross rentals from operation of the units.

Matters pertaining to the financial management and operations of the units reached a climax in March 1972. In later testimony Green admitted that the apartments were losing about $30,000 per month at the time. On March 27 PSL and Illini demanded the books and records from Granite, but they were refused. On April 11 PSL and Illini sought, and received, a temporary injunction, without notice but with a bond of $50,000, security waived. The injunction ordered Granite and Green to refrain from collecting rents and to not interfere with plaintiffs collecting rents. Granite and Green were also directed to turn over their books for examination. Notice of default and forfeiture of the contracts for deed between PSL and Granite were served upon Granite's attorney on April 20 and upon Green on April 21. On April 21 Granite and Green filed a motion to quash the temporary injunction and a counterclaim for an injunction against PSL

and Illini that would prevent their interference with defendants' operations. Hearings were held on April 21, 24 and 26. During the hearing on the 26th the plaintiffs made an oral motion for the appointment of a receiver for all the units. Green and Granite voiced no specific objection to the appointment of FSLIC. On April 28, 1972, the court entered an order denying the motion of Green and Granite to dissolve the temporary injunction and appointing FSLIC receiver. The April 28 order delineated the powers and duties of the receiver as follows:

> "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Federal Savings and Loan Insurance Corporation be appointed Receiver herein, with the usual powers of Receiver in Chancery, without bond, to manage, lease, rent, pay all bills, collect rents, issues and profits from the premises, pay all wages due or to become due to employees, supervise, repair, rehabilitate, insure and to perform all duties of Receiver in connection with the real estate involved in this suit and described in the exhibits attached to the complaint herein, and to report to this Court by the 15th of each month commencing May 15, 1972, and each thirty (30) days thereafter the income received from said properties by it, and the expenditures made in connection with the management of said premises. Said Receiver is herewith authorized and empowered to designate as its local agent to act on its behalf, in connection with the foregoing, any person, firm or corporation, including any of the parties to this litigation."

Pursuant to the last sentence of the above FSLIC designated Illini as its local agent in the management of the receivership properties. As agent it collected the rents, paid the expenses, selected managers, kept the books on the transactions, etc.

Green and Granite appealed the April 28, 1972, order and we reversed for the reasons already stated. In our original opinion we presumed that plaintiffs had been paid the installments on the contracts for deed which had come due while the case was pending settlement negotiations and appeal. We dissolved the temporary injunction and the receivership and remanded the cause for a hearing to determine the fees and expenses of the receiver.

Both plaintiffs and defendants filed petitions for rehearing. The plaintiffs pointed out that they had received no installment payments on the contracts for deed and requested an order of this court directing the receiver to apply accumulated moneys in its hands to the contracts. Granite and Green asserted certain considerations due them and that as a result the plaintiffs were not entitled to have the accumulated moneys in the hands of the receiver applied to the contracts. After reconsideration we stated: "In view of the apparent factual dispute regarding plaintiffs'

entitlement to payments on the contract it is necessary that the question be determined in the first instance by the trial court after pleadings and a hearing on the merits." We thereon directed that upon remand the trial court should call for pleadings upon the issue of plaintiffs' entitlement to receive from funds in the hands of the receiver the accrued, unpaid installments of the contracts for deed, hold a hearing and render a decision upon the merits.

The original opinion of this court dissolving the injunction and receivership was filed July 23, 1976. On August 13, 1976, PSL and Illini filed their petition for rehearing. On August 18, 1976, FSLIC purchased the first lien mortgages on all units in the receivership for $10,673,000 from Illini. On August 26, 1976, without notice to the defendants, the trial court or this court, the receiver, FSLIC filed a mortgage foreclosure action in the Federal District Court for the Southern District of Illinois on all 48 mortgages purchased from Illini. The foreclosure complaint alleged that no payments on principal or interest had been made on the notes since March 31, 1972. On August 31, 1976, Granite and Green filed their petition for rehearing in this court. The supplemental opinion upon rehearing was filed on September 23, 1976, and the mandate issued October 13, 1976.

On October 28, 1976, the receiver filed a petition in the trial court for an order directing it to file a final report and setting a hearing thereon. On November 1, 1976, Granite and Green filed a petition alleging that FSLIC had wilfully represented to the court that it was an impartial third party, neutral in all respects, and capable of administering the properties without favoritism and without self-interest or profit. It was further alleged that such representations were false in that FSLIC did in fact have a substantial self-interest in the properties, had contributed $6,000,000 to the plaintiffs and was contractually liable to contribute much more in certain events directly related to the subject matter of the lawsuit. The petition further asserted that FSLIC was the instigator of the wrongful forfeitures of the contracts for deed by PSL, that it had the right to purchase assets of Piasa, predecessor of Illini, at book value; that FSLIC as receiver expended hundreds of thousands of dollars toward capital improvements of the properties, thus adding to their value, and expended hundreds of thousands of dollars in renovation, upgrading and maintenance of the properties, thus adding to their value, all of which funds were taken from rental receipts, and notwithstanding that it collected over $6,000,000 in rents it made no payments of principal or interest on the mortgages on the properties. The petition finally alleged that in breach of its fiduciary duty it purchased the 48 mortgages on the properties of which it was receiver, without notice to or approval of the court, accelerated the payments due upon such mortgages, and, on

August 26, 1976, without notice to or permission of the court, filed suit to foreclose all 48 mortgages, all contrary to its fiduciary duty to the parties and adverse to the specific rights of the petitioners. The petition concluded with a prayer that the receiver be ordered to immediately reassign the mortgages to Illini, account for all its expenditures, pay into the rental fund all money paid to officers and employees of Illini and PSL, pay any excess of money to Granite for use in paying its obligations, turn over all books and records and return physical possession and management of the properties to petitioners. Granite and Green also filed an objection to the petition of FSLIC for authority to file a final report on the grounds that they had filed a petition for affirmative relief against the receiver and the case had not reached the stage for a final report.

FSLIC filed a response to the November 1, 1976, petition of Granite and Green in which they denied any wrongdoing in their actions as receiver. With regard to the allegations of wrongful purchase of the mortgages from Illini it asserted that the purchase was made, not as receiver, but in its capacity as an agency of the United States acting pursuant to the supervisory duties and powers granted it by Federal law. It further asserted that at no time had the notes and mortgages been in the possession of the receiver since the receiver was appointed "to perform all duties of receiver in connection with the *real estate* involved in this suit * * *." As count II FSLIC incorporated an affirmative response to the November 1, 1976, petition. In this FSLIC asserted that it did not seek the receivership and accepted the office only on condition that it be permitted to appoint Illini as its local agent. It made no representations regarding its qualifications to act and no questions were asked or objections raised, although its supervisory interest underlying the subject litigation was well known. In its supervisory capacity, and pursuant to its statutory duties, it suggested and implemented the merger of Piasa into Illini and as an incident of such merger entered into a financial agreement designed to minimize the danger to Illini's stability caused by the absorption of Piasa's assets and liabilities, and no secret has ever been made of FSLIC's involvement. It further asserted that its supervisory interest did not in any way disqualify it from serving as receiver and section 10—1 of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1975, ch. 32, par. 921) specifically authorizes the appointment of FSLIC as receiver of closed associations. FSLIC finally asserted that it purchased the 48 mortgages for $10,673,000 under the terms of its financial assistance agreement with Illini which gave it the right to purchase at book value any asset of Piasa held by Illini which had not been liquidated. FSLIC purchased the mortgages and filed the foreclosure after the appellate court ruled that the receivership had to be dissolved and that these actions were not taken as receiver but as an

agency of the United States acting in accordance with its functions under Federal law.

On December 22, 1976, acting on its own motion, the court struck the Granite and Green petition of November 1, 1976, and the response of FSLIC thereto for the reason that neither of the pleadings were responsive to the mandate of the appellate court. The order called for the final report of the receiver to be filed by February 10, 1977, and any objections thereto by February 25, 1977.

On January 3, 1977, Granite filed a petition charging plaintiffs with wrongful dispossession from the premises and wrongful procurement of a receiver, they asserted that plaintiffs had paid themselves and their agents large fees for management and prayed that the court order the receiver to pay petitioner a reasonable sum for loss of profits they would have derived from management. On the same day Green filed a petition for accounting in which he alleged he was the owner of laundry equipment in the Spencer Gardens apartment unit, that the plaintiffs and the receiver utilized such equipment in their operations, thereby converting them to their own uses. The petition further alleged that Green was the owner of all stoves, refrigerators and miscellaneous appliances in all units in the receivership and that the plaintiffs have refused to account for the profits therefrom. The petition prayed that the plaintiffs be ordered to account for all monies received from the laundromat and for all profits from rental of the appliances. Also filed on January 3, 1977, was a motion in aid of appellate court mandate by Granite in which it was alleged that the plaintiffs and the receiver have refused to restore petitioners to the *status quo* that existed at the time the temporary injunction was issued by returning possession of the units to petitioner. The prayer of the motion was for an order of court placing Granite in possession of the units.

The final report of the receiver was filed on February 9, 1977. It recited that FSLIC had served for 54 months and had filed with the court monthly reports of all monies collected and expended. Attached to the report was a consolidated statement which reflected income from rentals and expenditures for various categories such as taxes, utilities, management fees, legal fees, etc., all items being related to the several different rental units comprising the receivership property. The summary showed gross rentals of $5,734,933.89 and expenses of $4,149,835.79 and an undisbursed balance of $2,158,313. The excess over the arithmetical balance was interest earned on the receiver's account and certain adjustments. The final report concluded with a prayer for an award of fees to be paid from the balance on hand and the discharge of the receiver effective September 30, 1976.

On February 25, 1977, FSLIC filed a response to the Green petition of

January 3, 1977, in which it denied his assertions regarding ownership of the laundry facilities at Spencer Gardens unit and the refrigerators, stoves and appliances at all units and alleged them to be attached to and part of the real estate. The response also alleged that the matters asserted in the Green petition were a duplication of a prior suit pending in the circuit court of St. Clair County, No. 73 L 1676, and the petition should accordingly be dismissed pursuant to section 48(c) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48(c)).

Also on February 25, 1977, FSLIC filed a response to the Granite petition of January 3, 1977. It denied paying management fees to Illini or PSL and admitted paying monthly fees to resident unit managers. It further denied that Granite has been deprived of any profits since Granite had admitted to losing $30,000 per month by its management of the properties prior to appointment of the receiver. It concluded by stating that no management services were provided by Granite since the appointment of the receiver and therefore they were not entitled to fees.

FSLIC filed on February 25, 1977, its motion to strike Granite's motion for an order in aid of appellate court mandate on the grounds that only the appellate court could render such an order, the motion was premature, and, in any event, FSLIC obtained possession of the units from PSL, not Granite, a fact it asserted was admitted by Granite in its petition and in two complaints filed in St. Clair County Circuit Court, Case Nos. 73 L 1674 and 73 L 1677.

On February 25, 1977, the plaintiffs filed a response to the receiver's final report coupled with a petition for distribution of undistributed receipts. By this pleading the plaintiffs called upon the court to approve the final report of the receiver and order the undistributed balance of $2,158,313 applied to payment of past due mortgage payments which then aggregated $3,996,417.96.

The final filing on February 25, 1977, was plaintiffs' response to the January 3, 1977, petitions of Green and Granite and the motion in aid of appellate court mandate of Granite. They moved to strike, pursuant to sections 45 and 48 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, pars. 45 and 48), all three pleadings upon the grounds that they raised issues that were outside the scope of the appellate court mandate and that the same issues were previously raised in suits previously filed in the circuit court of St. Clair County entitled Granite Investment Company v. PSL Realty, et al., No. 73 L 1677, and Granite Investment Company and James C. Green v. PSL Realty Co., No. 73 L 1676.

On February 28, 1977, the defendants filed a motion to strike and objections to the receiver's final report. The objections were that approval of the final report would be tantamount to approving all the actions of the receiver from April 28, 1972, to the present, thus immunizing the receiver

from any subsequent action for wrongdoing despite the fact that defendants' petition of November 1, 1976, alleged misfeasance on the part of the receiver in that it had acted contrary to duties imposed by law. They further objected that their two petitions and motion filed January 3, 1977, were still pending and until they have been determined the court should not accept a final report.

A hearing was held on March 31 and April 4, 1977, on the final report of the receiver and all other pending pleadings filed on January 3, 1977, and subsequent thereto. The receiver, the plaintiffs and the defendants were present, presented evidence and made closing arguments. Findings of court were made and filed on April 13, 1977, the substance of which is as follows:

> The court is limited by the mandate of the appellate court which read:

>> "Upon remand, the trial court should call for pleadings upon the issue of plaintiff's entitlement to receive from funds in the hands of the receiver the accrued, unpaid installments upon the contract for deed, and after a hearing, should determine the plaintiffs' entitlement upon the merits of the question. The direction to the trial court to conduct a hearing on the fees and expenses of the receivership, as provided in the original opinion, stands."

> No monies are due Granite as prayed in its petition for reasonable profit, the petition of James Green for accounting for use of laundromat facilities is stricken for the reason that there is a companion case pending in St. Clair County Circuit Court and the matter is outside the purview of this court;

> The motion in aid of the appellate court mandate filed by Granite is outside the jurisdiction of the court and outside the purview of these proceedings;

> The final report filed by the receiver represents a consolidation of the 54 monthly reports of the income and expenses of the receivership which have hereto been submitted to and accepted by this court;

> The receiver discharged its fiduciary responsibility in a prudent, businesslike and non-prejudicial manner having sought and received court approval for extraordinary expenditures and other activities; and Granite offered no evidence challenging the need for or appropriateness of any expenditures made by the receiver;

> The order appointing the receiver did not authorize it to make any payment on the outstanding indebtedness and at no time during the original appeal of the case did any party make such a request that the income from the properties be disbursed in a

manner other than as provided in the order of the circuit court of April 28, 1972;

The final report should be approved and all undistributed funds paid to FSLIC in its capacity as mortgagee, for application on mortgages encumbering the properties, from which funds were derived, together with a *pro rata* application of interest monies to each property on the ratio of income generated by each individual property to the aggregate income generated by all the properties, subject to a receiver's fee, which the court fixes in the sum of 4% of the income received by it;

The appellate court in the original appeal determined that the original proceedings herein were ancillary remedies only and in the absence of a substantive action, could not stand alone and should be dissolved. Defendants apparently recognized and pursued other substantive relief in three separate legal actions filed in the St. Clair County court for damages by reason of contract forfeiture, wrongful possession of laundromat facilities, alleged breach of contract, misapplication of rental incomes and specific performance;

Since the decision of the appellate court this court has been advised, and pleadings disclose, that foreclosure proceedings have been filed upon properties presently the subject matter of this receivership and said properties are now possessed by FSLIC, as mortgagee in the Federal Court, Southern District, Illinois;

Considerable legal services were rendered to the receiver in this cause by its attorneys and the receiver has not sought any compensation therefor.

The foregoing findings produced an order which was entered by the court on April 29, 1977, the pertinent portions of which:

(1) Approved and adopted the final report of the receiver, including all actions taken by the receiver and its managing agent.

(2) Awarded the receiver a fee of 4% of the gross receipts generated by the receivership and directed payment from the undistributed proceeds available for distribution.

(3) Directed the balance of the undistributed funds be paid to the mortgagee for application to the indebtedness encumbering the property, said application to be made to the property from which the funds were derived. After payment of the fee and application to each mortgage any remaining portion of interest earned on the receivership account was to be applied on a *pro rata* basis to the properties. The *pro rata* application to each property was to be the ratio of income generated by each individual property to the aggregate income generated by all the properties.

(4) Granite's motion to strike and objections to the receiver's final report, the petition, petition for accounting, and Motion in Aid of Appellate Court Mandate were denied.

(5) The receiver and its agents were fully discharged and released effective September 30, 1976.

(6) The order was declared final and a finding made that there was no just reason for delaying enforcement of or appeal therefrom.

Defendants filed a notice of appeal from the order of court entered December 22, 1976, striking the defendants' petition of November 1, 1976, and a notice of appeal from the order of court entered April 29, 1977. The two appeals are consolidated for opinion.

As may be seen from a review of the pleadings described above, many issues and arguments were advanced to the trial court and they are renewed here. However, the scope of the issues to be considered is strictly controlled by the nature of the proceeding. The only concern we have is with the windup of the receivership following the dissolution of the temporary injunction and the receivership. Only issues necessarily related to that process may be considered. We may not be concerned with the ultimate rights of the parties with regard to the merits of the substantive claims made. The absence of substantive claims from the case caused the dissolution of the temporary injunction and the receivership. No hearing has ever been held concerning substantive claims, and we would refrain from making any remark that would indicate an opinion regarding any substantive rights of the parties.

However, the constricted area of concern cannot be so narrow as to preclude consideration of any and all matters reasonably and properly pertaining to the closing out of the receivership. Accordingly, we deem it proper to review claims of misfeasance and malfeasance by the receiver throughout the term of its office. Such actions are naturally brought into the focus of concern at the time of hearing on the final report. The defendants must at some time have an opportunity to be heard in court regarding their charges against the receiver in the management of the properties. They likewise must be afforded opportunity to make a full inquiry into the accounting given by the receiver. It is to be noted that FSLIC was not acting as receiver in this case pursuant to any Federal statute or because of any duty arising out of its supervision of savings and loan associations or because of any duty owed to the public as provided in a Federal statute. For the purposes of this case it must be regarded the same as any other receiver, personal or corporate. Although there are three other actions pending in the circuit court of St. Clair County wherein defendants Granite and Green are plaintiffs, and the relief sought in those cases involves the same property as the receivership, none of those cases either names FSLIC as a party defendant nor seeks

affirmative relief against it. This is the only action where defendants can question the conduct of the receiver; by failing to do so they would very likely be confronted with claims of *res judicata,* collateral estoppel or waiver in any future action.

■■ The foregoing generalized discussion of the permissible scope of review must now yield to the particular. The trial court and the parties were proscribed in their actions by the mandate of this court following our opinion in the first appeal. After a judgment is reversed by an appellate court, the appellate court judgment is final upon all questions decided and those questions are no longer open to consideration, and the court to which the cause is remanded can take only such proceedings as conform to the judgment of the appellate tribunal. *Berry v. Lewis* (1963), 27 Ill. 2d 61, 187 N.E.2d 688; *Thomas v. Durchslag* (1951), 410 Ill. 363, 102 N.E.2d 114; *People v. Bain* (1973), 10 Ill. App. 3d 363, 293 N.E.2d 758.

The mandate directed the trial court to call for pleadings upon the issue of plaintiffs' entitlement to receive from funds in the hands of the receiver the accrued, unpaid installments upon the contract for deed, and after a hearing, decide the question on the merits. The mandate also directed the court to conduct a hearing on the amount to be allowed as expenses and fees of the receivership.

What issues, then, may properly be encompassed within the plaintiffs' entitlement to payment on its contracts for deed with Granite and the receiver's entitlement to expenses and fees for its services? And, under the posture of the case before the trial court, were there other matters or issues that were undetermined in the first appeal or arose following the first appeal over which the trial court retained jurisdiction? These questions control the determination of the case.

Twenty-one days after the filing of the original opinion by this court, FSLIC, the still-acting receiver, purchased 48 mortgages from Illini. All the property of the receivership was covered by these mortgages. Eight days later the receiver filed suit in Federal District Court to foreclose on these mortgages. FSLIC did not seek permission of the trial court or the appellate court, or even notify them of its actions regarding the purchase and foreclosure.

On October 28, 1976, the receiver filed a petition for leave to file its final report.

Neither the action by the receiver in purchasing the mortgages and instituting foreclosure thereon, nor the filing of a final report by the receiver were directly addressed by this court in its opinion on the first appeal or in its mandate. Nevertheless it cannot be argued that the trial court was without jurisdiction to consider any issues these actions presented. The basis for jurisdiction to consider issues arising from the purchase and foreclosure of the mortgages arises because the transactions

occurred following the first appeal, and the basis for jurisdiction of matters arising from the filing of a final report is present because it is a necessary concomitant of the windup of a receivership.

> "If a cause is remanded the court to which it is remanded can take only such proceedings as conform to the judgment of the appellate tribunal, and if specific directions are given the court can do nothing but carry out such directions, but if directions are not given it must be determined from the nature of the case what further proceedings would be proper and not inconsistent with the opinion." (*Town of Kaneville v. Meredith* (1935), 361 Ill. 556, 198 N.E. 857.)

See also *People ex rel. Shake v. Lord* (1925), 315 Ill. 603, 146 N.E. 506.

Following the receiver's petition for leave to file its final report Granite and Green filed their petition of November 1, 1976, alluded to above, in which they attacked the purchase and foreclosure of the mortgages and the expenditure by the receiver of hundreds of thousands of dollars for capital improvements on the apartment units and the expenditure of hundreds of thousands of dollars on the renovation of the apartment units, and asked for an order restoring possession to petitioners. We think this petition tendered issues which the court had jurisdiction to consider although they were not specifically mentioned in the mandate. Those issues were the action of the court's receiver in purchasing and commencing foreclosure of mortgages upon the receivership property and the expenditure of funds for capital improvements and renovation. FSLIC filed its response to the November 1 petition traversing its allegations and alleging affirmative matters in justification of the purchase and foreclosure of the mortgages. On its own motion the court struck both these as being outside the powers conferred by the mandate. For the reasons assigned, we believe this was error.

Before dealing with the issues presented by the November 1, 1976, petition we will advert to the two petitions and the motion filed by defendants on January 3, 1977. The prayers of all three of these pleadings were denied by the court in its order of April 29, 1977, after a finding that all were outside the scope of the mandate. The first of these pleadings was the petition of Granite for loss of profits for wrongful dispossession. It is closely related to the third pleading which was Granite's motion in aid of appellate court mandate whereby Granite sought an order restoring it to possession of the units. We agree with the trial court that both these pleadings raise issues that were outside the scope of the mandate. Moreover, there was no residual jurisdiction of matters not covered by the mandate but in issue that would enable the·court to consider the pleadings. The issue of precisely when dispossession occurred, or who procured it, is not and never was in issue in this case and has no relevance

to the closing out of the receivership. Accordingly, it would be improper to address the issues of damages for wrongful dispossession and the restoration of possession in this case.

The second petition of November 1 was that of Green in which he sought an accounting for income from laundry equipment and appliances allegedly belonging to him and used by the receiver in the operation of the units. Whether the laundry equipment and appliances were part of the real estate or not is of no consequence to the receiver after dissolution is ordered. The laundry equipment and appliances were in place when the receiver assumed office and no distinction was made at any time in the mode of handling those items. The question of ownership and use of the items involved lies between Green, Granite and the plaintiffs. The receiver can neither help nor hinder in the resolution of the ownership question. It appears that all the bookkeeping on the receivership was done by Illini and those records will remain available to the parties whenever the ownership issue is tried. We accordingly agree with the trial court that the issue of the ownership of the laundry equipment and appliances, and any profits derived from their use, is outside the scope of issues that may be considered in closing out the receivership.

■ Following the filing of the final report and petition for discharge the defendants filed their motion to strike and objections. In their objections the defendants expressly adopted and incorporated the assertions and objections contained in their November 1, 1976, petition. No motion to strike or other responsive pleading was ever filed by the plaintiffs or the receiver. Thus, the issues regarding the propriety of the receiver spending hundreds of thousands of dollars for capital improvements to the units, spending hundreds of thousands of dollars for renovation of the units, and the propriety of the receiver purchasing the mortgages covering the units were once again before the court. We have already stated that the court was clothed with jurisdiction to hear and consider these matters and the pleadings placed the issues thereon once again before the court. Moreover, the parties presented a substantial quantity of evidence to the court touching these matters and strenuously advanced their respective positions. Presentation of these issues was continued in this court by the parties in both the briefs and the oral argument. In this posture of the case the parties must also be deemed to have formed the issues at trial, even absent formal pleadings (*Slezak v. Fleming* (1946), 392 Ill. 387, 64 N.E.2d 734; *Buzan v. Buzan* (1977), 45 Ill. App. 3d 181, 359 N.E.2d 834), and there can be no question that the issues were before the court and were litigated by the parties.

At the hearing evidence was given on behalf of the receiver regarding the unfinished and generally decrepit condition of many of the

units and of the propriety and economic feasibility of doing the necessary work to finish and restore them. Vigorous cross-examination was made by defendants' attorney. Green testified in defendants' behalf and set forth their position and views. Admittedly, much remained to be done to bring all the units to a state of completion. We think it is fair to say that as a result of the capital expenditures by the receiver new apartments were made available for renting and many needed repairs and improvements were made to existing apartments. There can be no question but that the receiver brought about a general improvement and upgrading of the units.

What, then, of the expenditure of hundreds of thousands of dollars from receivership funds for capital improvements and renovation? We believe the court's findings in this regard, implicit in its approval of the receiver's final report, to be fully supported by the evidence. There was little, if any, evidence that the improvements were unneeded, and no evidence that any expenditure of receivership funds was made on anything other than the property of the receivership, save, of course, the fees for resident managers and attorneys.

■■ Aside from the question of the weight of the evidence regarding the improvements and renovation we find that defendants have waived their right to object to expenditures for these items at the hearing on the final report. In each instance of expenditure of receivership funds for capital improvements or renovation the receiver filed a petition with the court which detailed the proposed expenditure and the means and method of making it. Defendants were notified of the filing of each of the petitions by receiving a copy thereof. They were also notified of the time of hearing on each petition. The defendants chose not to appear to dispute any of the petitions. Hearings were held in each case and orders of court entered authorizing the expenditure to be made. The record contains several such petitions and the proceedings and orders thereon, but it would only add undue length to this opinion to detail them. Since defendants stood by and suffered orders to be entered by the court without objecting thereto they waived their right to object at the hearing on the final report. The improvements did, after all, go exclusively into the receivership property and defendants are the owners of the equitable title thereto. It was their property that received the benefits of the improvements. Furthermore, the receiver was in these matters but acting for the court whose orders directed the expenditures. As stated in the case of *Reardon v. Youngquist* (1914), 189 Ill. App. 3, 12-13:

> "Regardless of the matter of consent, we consider the contention of appellees that a receiver in obeying the orders of the court must, in effect, become a guarantor of the correctness of the court's

rulings and be personally responsible for any error the court makes in directing how he shall distribute the money that comes into his hands, as unsound.

A receiver is an officer of the court and subject to its orders. The real custody of the property in his hands is in the court, of which he is an officer. *Coates v. Cunningham*, 80 Ill. 467. As such officer, he has no discretion or personal control over the property in his hands. *Fields v. United States*, 27 App. Cas. D. C., 433. He must obey the orders of the court so long as they are unimpeached. *People v. United States Mut. Acc. Ass'n.*, 88 App. Div. (N.Y.) 597. * * * Obedience to such orders is his sufficient protection. *How & Co. v. Jones*, 60 Iowa, 70; *In re Home Provident Safety Fund Ass'n.* 129 N.Y. 288; Id., 60 Hun 584; *Willis v. Sharp*, 124 N. Y. 406; *Pfeffer v. Kling*, 58 App. Div. 179, affirmed in 171 N. Y. 668; *Pierce v. Lees*, 17 App. Div. 346; *State v. Port Royal & A. Ry. Co.*, 45 S. C. 464. And this is true even if the order is erroneous and is subsequently reversed. *Platt v. New York & S. B. Ry. Co.*, 170 N. Y. 451; *Coe v. Patterson*, 122 App. Div. 76, and 123 App. Div. 914; *Lesster v. Lawyers' Surety Co.*, 50 App. Div. 181.

Having had notice of the various petitions of the receiver for direction and authority to pay the various items now objected to, they are chargeable with notice of the orders entered. It was clearly the duty of appellees, if they desired to oppose the payment of those various items by the receiver out of the funds in his hands, to have opposed the entry of the order by showing to the court why it should not or could not legally be entered, or at least to have sought its vacation on motion and a showing. Failing in this they have notified the receiver that they would hold him responsible for a misapplication of the funds, if he obeyed the order. Having done none of these things, but on the contrary having acquiesced in what was done by absolute silence, even if not by actual consent, their conduct savors of an attempt to entrap the receiver and should be and in our judgment is enough to estop them from now complaining. We think the receiver should have credit for all moneys paid out by him in pursuance to the orders of the court above referred to."

(See 75 C.J.S. *Receivers* §374b (1952).) It is also to be specifically noted that the expenditures discussed here were made before the receiver purchased the mortgages. Whether the expenditures were made by the receiver in contemplation of later acquisition by purchase and foreclosure of the mortgages is immaterial, as will later appear.

The mandate of this court directed the trial court to consider the issue of plaintiffs' entitlement to receive the excess funds in the hands of the

receiver as payments upon the contracts for deed with Granite. We think the court properly discharged this duty when it found the mortgages held by Illini, subsequently acquired by the receiver, to have a prior claim to these moneys and directed the receiver to apply them upon those mortgages.

We also sustain the trial court's approval of the balance of the receiver's final report insofar as it is concerned with the ordinary expenses of operation of the units, such as for utilities, taxes, monthly fees for the resident managers and the like. There is no showing of waste or mismanagement, and monthly reports of all receipts and expenditures were filed with and approved by the court. For all that appears these items were substantially the same as would have been incurred by any other operators of similar properties. In this regard the court's findings are supported by the evidence.

We finally come to those issues raised by the receiver's purchase of the mortgages on the receivership property. Judicial restraint is required for the situation could justify some caustic comment.

While receiver of the extensive properties involved in this case the receiver purchased mortgages on the properties and filed suit to foreclose them. This at a time when the receiver was the legal custodian of the property for the court. A receiver is an officer of the court, and his possession is the possession of the court. (*People ex rel. Scott v. Pintozzi* (1972), 50 Ill. 2d 115, 277 N.E.2d 844; *Anderson v. Macek* (1932), 350 Ill. 135, 182 N.E. 745.) There was no notice. There was no seeking of permission of court. There was no expression of intention. This surreptitious acquisition occurred after the opinion of this court ordered the injunction and receivership dissolved but before the receiver's final report had been filed. In fact, the discharge of the receiver is still not final and FSLIC remains even now an officer of, and an arm of, the court. The action of the receiver in purchasing and foreclosing of the mortgages would completely frustrate the jurisdiction and orders of the very court whose will it serves.

■■ Such practice simply cannot be countenanced. So hold all the authorities on the subject and so hold we. Much, much more is expected of receivers than the conduct we see here. Complete loyalty is a fundamental duty of a receiver and nothing less than that is acceptable. It is appropriate here to use the often-quoted expression of Justice Cardozo in *Meinhard v. Salmon* (1928), 249 N.Y. 458, 464, 164 N.E. 545, 546:

> "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this

there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd."

Professor Bogert, in his work on trusts and trustees (Bogert, The Law of Trusts and Trustees §543 (2d ed. 1978)) states:

"In its desire to guard the highly valuable fiduciary relationships against improper administration, equity deems it better to forbid disloyalty and strike down all disloyal acts, rather than to attempt to separate the harmless and the harmful by permitting the trustee to justify his representation of two interests."

The credo for fiduciaries penned by Justice Cardozo has been adopted and consistently followed by Illinois courts. For example we cite from *Ravlin v. Chicago, Aurora & DeKalb R.R. Co.* (1921), 297 Ill. 130, 144, 129 N.E. 730, 736:

"When a person accepts an appointment as receiver he must not permit his personal interests to in anywise conflict with his duty in that respect. It is well settled that a receiver can make no profit out of his trust other than the compensation which the court may allow him under the law. He cannot deal with the property involved for himself while he is receiver, and if he does, the benefit must inure to the trust estate. It makes no difference if the company for which he is receiver was not a loser in the transaction nor however free from fraud the transaction may be. *Hooper v. Winston*, 24 Ill. 354; *Farwell v. Pyle-National Electric Headlight Co.* 289 id. 157; *Magruder v. Drury*, 235 U.S. 106, 35 Sup. Ct. 77; 34 Cyc. 254, 255; 23 R.C.L. secs. 83, 84."

The Supreme Court has also spoken on the conduct we consider here. In *Crites, Inc. v. Prudential Insurance Co. of America* (1944), 322 U.S. 408, 409, 88 L. Ed. 1356, 1358, 64 S. Ct. 1075, 1077, one Simkins had been appointed by a court as receiver of farmlands "to collect the rents and proceeds of the real estate * * * to operate and manage * * *." During the course of the receivership, and while a foreclosure sale was pending, Simkins served as intermediary between the mortgagee and the buyer but forestalled the transaction until the foreclosure sale was complete. He then had the transaction completed at a great profit to the mortgagee who was also the sole bidder and purchaser at the sale. Simkins at no time disclosed to the court the existence of the prospective buyer or the amount of the offer made. The case arose when the petitioner, incorporated creditors of the mortgagors, sought to surcharge receiver Simkins for the payments he had received from the purchasers

for procuring the sale to them. The court commented as follows on the duties of a receiver:

"It is obvious, moreover, that Simkins was bound to perform his delegated duties with the high degree of care demanded of a trustee or other similar fiduciary. He was not free to deal with the property under his control as co-receiver in such a way as to benefit himself or his associates. Any profits that might have resulted from a breach of these high standards, including the profits of others who knowingly joined him in pursuing an illegal course of action, would have to be disgorged and applied to the estate. [Citations.]

But Simkins' conduct is not to be measured solely by the arbitrary dichotomy of functions relating to the conservation and liquidation of the farm properties. As a co-receiver in charge of collecting the rents and operating the farms, Simkins was also an officer or arm of the court. He was appointed to assist the court in protecting and preserving, for the benefit of all parties concerned, the properties in the court's custody pending the foreclosure proceedings. [Citations.] The court's authority and duties, however, covered all phases of the foreclosure proceedings. They included not only the conservation but the liquidation of the farm properties. The court had discretion to delegate these duties as it saw fit. But whatever the functional distribution, all the court officers were bound to act fairly and openly with respect to every aspect of the proceedings before the court. The mere fact that any one aspect did not fall within the delegated function of a particular court officer did not give that officer free rein to act in a secret, non-judicial manner as to that aspect. The court, as well as all the interested parties, had the right to expect that its officers would not make undisclosed private agreements, fail to reveal any pertinent information or use their official position for their own profit or to further the interests of themselves or any associates.

It is impossible to reconcile the activities of Simkins relating to the foreclosure sales with the basic standard of conduct demanded of him as an officer of the court." (322 U.S. 408, 414-15, 88 L. Ed. 1356, 1360-61, 64 S. Ct. 1075, 1079.)

Also see *Jackson v. Smith* (1921), 254 U.S. 586, 65 L. Ed. 418, 41 S. Ct. 200.

The Supreme Court termed the actions of the receiver in *Crites* as "reprehensible" and the term is equally applicable here.

FSLIC argues strenuously and at length in an attempt to justify its actions in purchasing and foreclosing on the mortgages. It asserts that it did not purchase the property it controlled as receiver, that property was the tangible real estate, it bought something else, it bought the mortgages

which were no part of the receivership property. In its brief it states that in order for the receiver to breach its fiduciary duty it must be shown that it somehow dealt with receivership property. It then reasoned that the lien was obtained not by the receiver but by Piasa. When the receiver later purchased the mortgage interest from Illini pursuant to a contract which antedated the receivership, the receiver did not obtain a lien against receivership property. Instead it purchased a "mere right to foreclose an existing lien."

This argument is specious. The mortgagee can control the property, as indeed they are seeking to do. They assert the right to possession by virtue of an order of the district court entered in the foreclosure proceeding. This is in direct conflict with its possession as receiver in this case, an office from which it is not yet discharged.

Applicable in this situation is the following from Restatement of Restitution §196 (1937):

"Section 196. * * *

Where a fiduciary in violation of his duty to the beneficiary purchases or retains an encumbrance upon property entrusted to him as fiduciary, he holds the encumbrance upon a constructive trust for the beneficiary.

*Comment:*

*a.* The rule stated in this Section, like the rule stated in Section 195, deals with a situation where the fiduciary is not acquiring property entrusted to him in which the beneficiary has a pre-existing interest, or property which he is under a duty to purchase or has undertaken to purchase for the beneficiary, but where the beneficiary has an interest in the subject matter and the fiduciary acquires for himself individually a different interest in the same subject matter.

*b. Where the rule applies.* The rule stated in this Section is applicable not only where it is the duty of the fiduciary to purchase the encumbrance for the beneficiary (see Section 194(1)), but also where he is under no such duty."

FSLIC addresses a further argument to sustain its actions in purchasing the mortgages. It urges that it may serve a dual capacity and pursue dual aims in furtherance of the duties it performs. It asserts that as receiver of the circuit court it has managed the properties in accordance with law and the orders of the court and has rendered a strict account of its actions in that regard. On the other hand, it is an agency of the United States Government and as such has statutory duties to perform as a supervisory agency for savings and loan associations. In this latter capacity it has the power, both statutory and contractual (with Illini,

executed in pursuance of the merger arranged between Piasa and Illini) to purchase and foreclose the mortgages on the receivership property. It reasons that since it was acting in this latter capacity in purchasing and foreclosing the mortgages that it was outside the scope and reach of the circuit court and its action should not, or even cannot, be challenged.

Unmistakenly we discern in this presentation of FSLIC a scarcely veiled suggestion that as an agency of the United States Government its actions as well as its motives should go unquestioned for it is, after all, going about doing the public good.

This argument cannot elevate its breach of trust, faith and legal duty to the level even of barely acceptable conduct. Duality of position is never acceptable as an explanation for self-dealing with the property of another by a fiduciary. This the FSLIC well knew when it agreed to accept appointment as receiver. Having accepted the appointment as receiver its singular duty attached and that singular duty cannot be avoided by the ploy that it was "acting in another capacity." There can be no other capacity. Accordingly, FSLIC has waived the right to claim, and is estopped to assert, that in purchasing and foreclosing the mortgages in question it was acting in a supervisory capacity of savings and loan associations under a Federal statute.

In sum, the claim of FSLIC that it was empowered to act in some capacity other than as receiver cannot be asserted in this case. Accordingly, the trial court should have ordered FSLIC, its receiver, to reconvey to Illini all 48 of the mortgages it purchased, thus returning to the court the property it took from it.

For its misconduct and indiscretions incompatible with its position as an officer of the court, all fees and compensation should be denied FSLIC. *Crites, Inc. v. Prudential Insurance Co. of America.*

For the foregoing reasons we affirm the order of the trial court entered on April 29, 1977, except that portion discharging the receiver. This cause is remanded to the trial court with directions to enter an order that FSLIC, as receiver, reconvey the 48 mortgages in question to Illini before it can be discharged as receiver and that FSLIC shall receive no fees or compensation for its services as receiver. Fees and compensation previously allowed will be directed to be returned to the receiver's account and paid with the previous balance toward satisfaction of the mortgages.

Affirmed in part, reversed in part, and remanded.

KUNCE and KASSERMAN, JJ., concur.

## SUPPLEMENTAL OPINION

PER CURIAM (JONES, P. J., KARNS and KASSERMAN, JJ.): This supplemental opinion is necessitated because the receiver, FSLIC, is now proceeding in the United States District Court, Central District, Springfield, Illinois, formerly the Southern District, at the time the foreclosure proceedings were instituted, to foreclose the very mortgages which we ordered reassigned in our opinion filed September 13, 1979.

It cannot be denied that the Federal court has jurisdiction of the parties and subject matter in its cause No. A-Civ. 76-79 nor that it has full power and jurisdiction to proceed therein. We do not seek to control the exercise of jurisdiction by the Federal court in any way whatsoever; we do not because we recognize that we cannot.

As for our part, we are now concerned with but a small residue of the case that was, and is, pending before us. By our opinion in this case, filed September 13, 1979, we have addressed and decided the merits of the issues that were presented to us. We are now only concerned with the discharge of the receiver. *We are not dealing with a party to the action, we are dealing with the receiver in the case, an arm of the court itself.*

We would specifically point out that at the time the receiver purchased the notes and mortgages and filed the foreclosure action the receivership had not been dissolved. Our original opinion in this case which called for dissolution of the injunction and receivership was filed on July 23, 1976, and a supplemental opinion was filed on September 23, 1976. However, the opinion did not become operative, that is, the receivership was not actually dissolved, until the mandate was issued on October 13, 1976. Our receiver had purchased the 48 mortgages on August 13, 1976, and filed the foreclosure action on August 18, 1976, two months prior to the time the receivership was dissolved. At the time of the purchase and commencement of the foreclosure action this court had full jurisdiction of the entirety of the action, part, parcel, parties and receiver. FSLIC should not be heard to say in any court that at the time it acquired the 48 mortgages the receivership had been dissolved. It is true enough that the receivership has now been dissolved, but also true is the fact that our receiver has not been discharged.

An aspect of this cause was heard by a single judge of this court upon an emergency basis on September 26, 1979, such hearing being held in response to a "Motion for Order" filed by the defendants on September 25, 1979. All parties and the receiver were present by counsel. Following the September 26, 1979, hearing an order for stay was entered. At the request of the receiver and the plaintiffs, a reconsideration hearing on the September 26, 1979, order for stay was granted before a full panel of the court and held on September 28, 1979. Again, all parties were present by counsel.

Upon reconsideration by the full panel it has been concluded that the order for stay entered on September 26, 1979, should stand, and furthermore that it should be incorporated in and made a part of this supplemental opinion. We have further concluded that the mandate of this court should issue instanter.

The September 26, 1979, order for stay, which is incorporated in this supplemental opinion, is as follows:

### "ORDER FOR STAY

This cause heard before the Appellate Court for the Fifth District of the State of Illinois upon the motion for order filed by Defendants, Granite Investment Company and James C. Green on September 25, 1979. Hearing on the motion was set for September 26, 1979 at 11:00 A.M. and notice ordered given.

The Court finds that notice of the hearing was given by the attorney for defendants by hand delivery or telephone.

Present at the hearing were Rex Carr, for the defendants, Robert Patterson for the receiver, FSLIC, and W. Stanley Walch for plaintiffs Illini Federal Savings and Loan Association and PSL Realty Co.

The attorney for the defendants advised the court in both the present motion and by oral argument that the court receiver, FSLIC, threatens to thwart the decision of this Court contained in its opinion filed on September 13, 1979, although the mandate of this Court has not yet issued, by proceeding with the mortgage foreclosure case in the Federal District Court for the Southern District of Illinois, Southern Division. In the oral argument the attorneys for the receiver, FSLIC, and the plaintiff acknowledged that they were, either separately or in conjunction with each other, indeed proceeding with the action for foreclosure on the forty-eight mortgages in issue in this case and furthermore it was stated that the case is set for hearing before the Federal Court on September 27, 1979.

In presenting oral argument before the Court on the hearing of the instant motion the parties sought to inject issues beyond the scope of the appeal considered by the court in this case and sought to inject factual matters that were not in the record considered by this Court in this appeal.

As stated in the Opinion of September 13, 1979 the issues before this Court were narrow. Even more narrowly drawn is the issue presented by Defendants' motion of September 25, 1979. The issue is stated to be: Even though the mandate of this Court has not yet issued, may the court receiver conduct itself in such a manner as to

completely frustrate the jurisdiction and power of the court and reap the benefit from its wrongful conduct which was described in the September 13, 1979 opinion?

It is to be noted at the outset that this Court does not have the power or the jurisdiction in any degree to limit or control in any way the jurisdiction of the Federal District Court and does not seek to do so. This Court does, however, have jurisdiction over the parties and over the subject matter of this cause of action as described in the September 13, 1979 opinion. Of greater force than the matter of jurisdiction is the rule that the court controls its own receiver, an officer of and an arm of the court.

In its presentation before the Court both in its brief and at the hearing on the instant motion the receiver has attempted to convince the court that it is acting in a dual capacity, that it is before the court in dual position. That argument was rejected in the September 13, 1979 opinion of this Court and must be rejected now.

As was stated in the September 13, 1979 opinion the receiver was wrong when it acquired the 48 mortgages from Illini and it was wrong when it filed suit to foreclose these mortgages, the reasons for this were discussed in the opinion and need not be further considered here. In the same manner the receiver is wrong, and greviously so, in seeking to gain an advantage and profit from its breach of faith and duty to the court by taking means to divest itself of the forty-eight mortgages in question before the action of this Court becomes final by issuance of its mandate.

If the 48 mortgages are foreclosed they would then be merged into a judgment of the Federal Court and cease to exist and therefore there would be nothing to reassign in compliance with the prospective mandate of this Court. The foreclosure action brought by the receiver would completely frustrate the jurisdiction and prospective order of the court which it serves and which designated it as receiver.

This Court would be justified in accelerating its mandate under Supreme Court Rule 368 but it declines to do so for it would foreclose the parties of an opportunity to file petitions for rehearing and furnish this Court the further opportunity to consider the case in the light of these petitions for rehearing.

As in the case of our September 13, 1979 decision, we decline to address the right to possession of the premises involved in this case. Our sole consideration here is the wrong perpetrated upon the court by its receiver by breach of faith and duty and the prevention of the gaining of an advantage or profit by the receiver

by reason of such wrongful conduct. In like manner it would but compound the wrong if the receiver were to transfer or assign its interest in the mortgages to another and permit them to gain an advantage or benefit they would otherwise be unable to acquire. Specifically, the receiver should not be permitted to transfer the wrongfully acquired mortgages to Illini who would then be plaintiffs in a foreclosure action in federal court in an advanced stage of the foreclosure proceedings. Transfer by the receiver would permit by indirection that which the receiver could not achieve directly, that is, the removal from the jurisdiction of the court the 48 wrongfully acquired mortgages.

The Court deems it prudent to order a stay against its receiver, FSLIC, and the plaintiffs Illini Federal Savings and Loan Association and PSL Realty Co., to prevent them from dealing with the 48 mortgages in any manner whatsoever otherwise than as directed by its opinion of September 13, 1979. Authority for issuance of a stay order is found in Supreme Court Rule 305(b) and 366(c), and in the inherent common law power of the court.

IT IS THEREFORE ORDERED that the receiver of the court, FSLIC, and the plaintiffs Illini Federal Savings and Loan Association and PSL Realty Co., stay any further action of any nature whatsoever in regard to the 48 mortgages, including, but not limited to, the prosecution of any action to foreclosure upon the 48 mortgages in Federal District Court for the Southern District of Illinois, or any other court, and that they further stay any and all other attempts to transfer or assign such mortgages in any matter to any person or entity whatsoever pending further order of this Court or the issuance of its mandate.

IT IS FURTHER ORDERED that any actual or attempted transfer of title by the receiver, FSLIC, or the plaintiffs herein, brought about in any manner including sale or transfer whether pursuant to foreclosure of mortgages or by direct assignment, or otherwise, shall be void and ineffective to transfer title to such mortgages or the property they incumber. The defendants or their agents are directed to cause a copy of this order for stay, together with a description of the land encumbered by the 48 mortgages in question, to be recorded in all counties of Illinois in which any real estate herein involved is located, such order for stay to serve as notice to all purchasers or prospective purchasers in compliance with Ill. Rev. Stat., ch. 110, par. 395 and Ill. Rev. Stat., ch. 30, par. 121. ENTERED: September 26, 1979 and hand delivered to counsel of all parties."

At the September 28, 1979, rehearing the defendants filed with this

court a petition for an order of court finding the receiver and the plaintiffs in contempt of court and for assessment of a fine of $10,000,000 as punishment therefor. We decline to consider this petition at this time. If appropriate it may be refiled in the circuit court upon issuance of the mandate of this court.

■■ Also at the September 28, 1979, hearing the receiver and the plaintiffs argued that the order for stay went beyond the consideration of the September 13, 1979, opinion when it stated that any attempted transfer of title to the properties in question would be void. If such an order were applicable to an ordinary party to a lawsuit, the argument might well be valid. However, we deem it otherwise when it is considered that the order is applicable to the court receiver and any who may take therefrom.

That portion of the incorporated order for stay relating to the acceleration of the mandate is superseded by this supplemental opinion. Also, that portion of the incorporated order for stay indicating that the stay would terminate upon issuance of the mandate is superseded. The provisions of the order for stay are made an operative part of the opinion of the court.

Mandate ordered to issue instanter.